IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EUGENE CARSON, ) | | |
| Reg. No. 19600-040, ) | | |
| ) | | |
| Petitioner, ) | | |
| ) | | |
| v. ) | CASE NO: 2:19-CV-228-WKW-CSC | |
| ) | [WO] | |
| ALAN COHEN, WARDEN ) | | |
| FPC MONTGOMERY,[1] ) | | |
| ) | | |
| Respondent. ) | | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

**I. INTRODUCTION**

Petitioner Eugene Carson ("Carson"), a federal prisoner confined at the Maxwell Federal Prison Camp in Montgomery, Alabama, brings this petition for writ of habeas corpus under 28 U.S.C. § 2241. Carson alleges due process and equal protection violations in conjunction with a disciplinary finding that he was in possession of a non-hazardous tool or other non-hazardous contraband resulting in loss of 41 days of good conduct time and loss of privileges. For relief, Carson requests the sanctions imposed be vacated. Doc. 1.

Respondent filed a response and relevant evidentiary materials addressing the claims presented by Carson. In this response, Respondent denies any violation of Carson's

---

[1] The only proper respondent in this § 2241 action is the inmate's immediate custodian—the warden of the facility where the inmate is confined. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). As Alan Cohen is the Warden at FPC Montgomery, the Clerk is DIRECTED to change the name of the respondent to Alan Cohen, Warden, Warden FPC Montgomery, upon the docket and record of this case.

constitutional rights. Doc. 15. In light of the arguments and evidence presented by Respondent, the Court granted Carson an opportunity to demonstrate why this petition should not be denied. Doc. 16. Carson filed a response. Doc. 17.

Upon review of the petition, the response filed by Respondent, and applicable federal law, the undersigned concludes that Carson's application for habeas corpus filed is due to be denied.

## II. DISCUSSION

### A.   Jurisdiction & Venue

The law is settled that a 28 U.S.C. § 2241 petition for writ of habeas corpus is the proper vehicle for a prisoner to challenge the manner, location or execution of his sentence. *See Lopez v. Davis*, 531 U.S. 230, 236 (2001); *Williams v. Pearson*, 197 F. App'x 872, 877 (11th Cir. 2006). Jurisdiction is determined at the time the action is filed. *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994). Carson challenges the validity of a disciplinary he received on August 6, 2018, for violating institutional rules prohibiting inmates from possessing a non-hazardous tool or other non-hazardous contraband including unauthorized nutritional or dietary supplements for which he was sanctioned to a loss of good conduct time and loss of privileges. Doc. 15-4 at 4. Since Carson challenges the execution of his sentence, his claim is proper under 28 U.S.C. § 2241. And "[j]urisdiction is determined at the time the action is filed[.]" *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994). Thus, venue is proper before this Court as Carson was incarcerated in this district when he filed the Petition. *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) (holding that, generally, a 28 U.S.C. § 2241petition for habeas corpus relief

"may be brought only in the district court . . . in which the inmate is incarcerated."); *Brown v. Warden of FCI Williamsburg*, 2019 WL 1780747, at *2 (D.S.C. Mar. 25., 2019), *Report and Recommendation adopted*, 2019 WL 1773382 (D.S.C. Apr. 23, 2019) (finding "[a] petition under § 2241 must be brought against the warden of the facility where the prisoner is being held [at the time he files the petition], 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. [426,] 434–35 (2004), and 'in the district of confinement rather than in the sentencing court,' [*U.S. v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989) (per curiam).]").

**B. Background**

On May 31, 2016, Carson entered a guilty plea in the United States District Court for the Western District of Michigan to Possession with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c)(1). Doc. 1-1 at 2. Carson received a 24-month term of imprisonment on the possession charge and a 60-month sentence for the firearm charge—to be served consecutively—followed by five years of supervised release. *Id.*

On July 5, 2018, while incarcerated at Federal Correctional Institution McKean in Bedford, Pennsylvania, Carson was subjected to a search which revealed he was in possession of 95 unauthorized pills. Doc. 15-1 at 2. That day, prison personnel initiated an incident report charging Carson with a violation of Code 111—which prohibits the introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia which is not prescribed for the individual by the medical staff—and an

investigation into the incident began.[2] Doc. 15-1 at 2; Doc. 15-4 at 3–4. The pills found in Carson's possession were subsequently identified as Growth Factor-9 supplements. Doc. 15-4 at 3–4. On July 11, 2018, the Unit Disciplinary Committee ("UDC") reviewed the incident report and found the alleged violation serious enough to warrant referring the matter to the Discipline Hearing Officer ("DHO") for a hearing with a recommendation for a loss of good conduct time totaling 41 days and loss of privileges. Doc. 15-1 at 2. The same day, Carson received—but refused to sign—Form BP-S293 (Inmate Rights at Discipline Hearing). Doc. 15-3 at 2-3. The Form advised Carson of the following rights:

> 1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;
>
> 2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;
>
> 3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence [on] your behalf, provided institutional safety would not be jeopardized;
>
> 4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;
> 5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;
>
> 6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and

---

[2] The BOP's disciplinary process is found in the Code of Federal Regulations, 28 U.S.C. §§ 541–541.8 These regulations delineate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation under 28 C.F.R. § 541.5.

> 7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

Doc. 15-3 at 2. Carson also received—but refused to sign—a copy of BOP Form S294 (Notice of Discipline Hearing Before the DHO). Doc. 15-2 at 2. The form reflects Carson indicated he did not wish to have a staff representative or witnesses during the hearing. *Id.*

DHO Zeher conducted Carson's disciplinary hearing on August 6, 2018. Doc. 15-4 at 2. Carson was advised again of his rights, including his right to a staff representative, his right to call witnesses, his right to make statements in his defense, and his right to appeal the decision of the DHO. Doc. 5-4 at 2–5. Carson declined a staff representative and witnesses. Doc. 15-4 at 2. Upon questioning by the DHO, Carson agreed the pills found on his person belonged to him, he was using them but forgot he had them, and he was not attempting to introduce anything into the institution. *Id.* In addition to the Incident Report and Investigation, the DHO considered the reporting officer's written statement regarding the incident, Carson's testimony in which he admitted the prohibited items were his, he had been using them, and had forgotten about them, a photo sheet which depicted the pills recovered from Carson were Growth Factor-9 pills, and a memorandum from prison health services dated July 5, 2018, identifying the pills as supplements and not narcotics. *Id.* at 3. Based on the evidence at the hearing, the DHO determined Carson violated Code 331— "[p]ossession . . . [or] introduction . . . of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband . . . [which] includes such items as . . . unauthorized nutrition/dietary supplements"——based on the greater weight of the facts and evidence which showed Carson had committed the prohibited act. *Id.* at 3–4; 28 C.F.R. § 541.3. In

finding that Carson had committed the prohibited act, the DHO imposed the following sanctions: (1) loss of fourteen days good conduct time; (2) forfeiture of 27 days of non-vested good conduct time; and (3) one year without visiting, phone, and commissary privileges. Doc. 15-4 at 4.  The DHO based the sanctions on the following: (1) Carson's conduct threatened his safety and security as well as that of the entire institution (2) Carson alone was responsible for his actions and behavior at all times (3) the loss and forfeiture of good time was to impress on Carson that continued misconduct would prolong his incarceration, and (4) to deter Carson from future misconduct. Doc. 15-4 at 4. The DHO delivered his report to Carson on August 28, 2018.[3]

    **C.**    **Petitioner's Claims**

        **(1)**    **Due Process**

Carson alleges a violation of his due process rights based on the sanctions imposed on him for violating Code 331 which he claims were excessive and  because he did not receive advance notice of the charge that he was found to have violated. The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-

---

[3]The report also indicated distribution of the DHO packet to Carson was delayed past the fifteenth working day after the hearing due to unforeseen circumstances but that the delay did not interfere with Carson's appeal right as he was told he had twenty calendar days from his receipt of the DHO report to submit an appeal. Doc. 15-4 at 4.

> 64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart*, 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Because Carson lost good conduct time as a result of the challenged disciplinary, the second situation is present in this case. In the context of a prison disciplinary proceeding where a protected liberty interest is implicated, the due process that must be afforded a prisoner in a disciplinary action is mandated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court noted that, while prisoners retain some rights, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen." *Id*. at 555. The *Wolff* Court explained that disciplinary proceedings are not criminal prosecutions, and that the institutional needs of the prison further support some limitations upon the prisoner's rights. *Id*. at 556.

*Wolff* also sets forth the minimum requirements of procedural due process which should be afforded to prisoners: (1) at least 24-hour advance written notice of the claimed violation; (2) an impartial hearing body; (3) a written statement by a factfinder as to the evidence relied upon and the reasons for the disciplinary action taken; (4) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not

be unduly hazardous to institutional safety or correctional goals; and (5) the ability to seek help from a fellow inmate or from the staff where the matter is complex. *Id*. at 563–71; *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011).

> The Supreme Court later clarified that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . .'" *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455–56, 105 S.Ct. at 2774. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456, 105 S.Ct. at 2774. In *Hill*, the Supreme Court upheld the determination of a disciplinary board even though the evidence "might be characterized as meager" because the record was not so devoid of evidence as to render the board's decision arbitrary. *Id*. at 457, 105 S.Ct. at 2775.

*Tedesco v. Sec'y for Dep't of Corr.*, 190 F. App'x 752, 757 (11th Cir. 2006). It is not, however, the function of this Court to assume the task of retrying prison disciplinary disputes and a de novo review of a hearing officer's factual findings is not required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1982). This Court must only determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary [hearing officer]." *Hill*, 472 U.S. at 455–56.

Carson maintains he was issued an incident report which reflected a violation for Code 111 which was changed to Code 112 on the DHO report, and he therefore was not properly advised of the charge against him prior to the disciplinary hearing. And because

8

it was subsequently determined that the proper offense code to be applied to Carson's conduct was Code 331, he asserts that due process required another disciplinary hearing so he could defend himself against the correct offense code and which would result in imposition of appropriate and proportionate sanctions. Doc. 1-1 at 6–8.

Carson does not contest committing the offense—rather, he claims he was denied due process because he was not provided advance written notice of the charge he was found to have violated. Carson was found with unauthorized pills and initially charged with violating Code 111—introducing or making, *inter alia,* narcotics or other intoxicants. Carson admitted to possession of the pills. Because the type of pills he possessed, however, were determined to be consistent with a violation of Code 331 rather than Code 111, Carson was found to have violated the lesser offense. Carson was aware of all the facts surrounding the basis for imposition of the original offense charged and which resulted in the challenged disciplinary proceeding. He fails to explain how being found guilty of the downgraded offense impacted his ability to defend himself since the facts underlying the charged conduct—which Carson does not dispute—were essentially the same.[4] *See Guerrero v. Recktenwald*, 542 F. App'x 161, 164 (3d Cir. 2013) (holding that a DHO has discretion to conclude that a prisoner "committed a similar, lesser offense" instead of the original charge); 28 C.F.R. § 541.8(a)(1) (emphasis added) (after considering the facts, a DHO may

---

[4] The Court notes the DHO's report reflects an offense code of 112 which involves the introduction or making of any narcotic, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by the medical staff. Doc. 15-4 at 2. As explained, Carson was found guilty of a lower-level offense based on the facts underlying the charged offense, and the DHO had discretion to find he committed a similar, lesser offense than that with which was originally charged.

find either that the prisoner "committed the prohibited act[] charged" or "*a similar prohibited act[] as described in the incident report*.").

Here, there was "some evidence" to support the DHO's decision that Carson had committed the prohibited act he for which he was found guilty. The DHO considered Carson's own statements at the disciplinary hearing, the written statement of the reporting officer, a photo sheet of the pills recovered from Carson, and a supporting memorandum from health services identifying the pills in Carson's possession. Doc. 15-4 at 3–4. It is not, as explained, the role of this Court to determine the propriety of the evidence, only that there is "some evidence" in the record to support the findings of the DHO. *See Hill*, 472 U.S. at 455. Carson fails to show any due process violation regarding this claim.

Carson maintains his due process rights were violated because the DHO who presided over his disciplinary hearing was not qualified as he was neither authorized nor licensed to serve in that capacity. The DHO's alleged lack of qualifications, Carson claims, led to imposition of excessive disciplinary sanctions in violation of his due process rights. Doc. 1-1 at 8.

The unrefuted evidence reflects DHO Zeher is a BOP employee and was the staff member assigned as the DHO for Carson's disciplinary hearing. *See* Doc. 15-4. Under 28 C.F.R. §541.1, BOP "staff" may impose sanctions on inmates who commit prohibited acts. The term "staff" under 28 C.F.R. § 500.1(b) is defined as "any employee" of the BOP. Additionally, 28 C.F.R. § 541.8(b) provides that the "DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." Carson's conclusory claim that the DHO Zeher was unqualified to serve as

10

the hearing officer at his disciplinary proceeding is unsupported, and Carson does not otherwise point to any conflict in DHO Zeher's ability to be an impartial decision maker. For these reasons, the Court finds the BOP did not violate Carson's due process rights by finding him guilty of violating Code 331, revoking 41 days of his good time, or restricting his visitation, commissary, and telephone privileges. Consequently, this due process challenge is without merit.

    Carson challenges the sanctions imposed for his violation of Code 331 which he contends were excessive and reflective of the 100 series offense with which he was originally charged. When he was caught with the unauthorized pills Carson admitted they belonged to him and denied he possessed them with intent to distribute them. Following a disciplinary hearing, the DHO determined that, based on the greater weight of facts and evidence, Carson had committed the prohibited act of possession, manufacture, or introduction of non-hazardous tool or other non-hazardous contraband in violation of Code 331. In sanctioning Carson to a loss of 14 days good conduct time, forfeiture of 27 days good conduct time, and loss of visiting, phone, and commissary privileges for one year, the DHO explained that Carson's conduct threatened his security and the security of the entire institution and that he alone is responsible for his actions and behaviors at all times. The DHO further explained that the loss of good conduct time was to impress on Carson that his continued misconduct would prolong his period of incarceration and that the sanction of loss of privileges was imposed as an immediate deterrent from future misconduct. Moreover, allowable sanctions under 28 C.F.R. § 541.3—Available Sanctions for Moderate Severity Level Prohibited Acts, which encompasses a Code 331 violation—

include forfeiture or withholding of earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, the disallowance of up to 25% (1-14 days) of good conduct time credit available for a year, and loss of privileges. 28 C.F.R. § 541.3. The 27 days of Carson's good conduct time forfeited represented 25% of the 108 days he had available of non-vested good conduct time and the 14 days of good conduct time lost represented 25% of the 54 days of good conduct time available for the calendar year. Doc. 15-5 at 2–3.

Here, the evidence shows the sanctions imposed for Carson's violation of Code 331 were consistent with the severity level of the prohibited act and within the sanctioning guidelines available to the DHO for the offense charged. Consequently, Carson fails to demonstrate any due process violation with this claim.

**(2)     Equal Protection**

Carson challenges as a violation of his right to equal protection that the sanctions imposed for being found guilty of a three hundred series violation are substantially more punitive than those imposed on other inmates who commit more severe offenses. He maintains that "a review of cases involving 100 series level incidents demonstrate that [he] was punished more severely" despite the fact that he was charged with a lesser offense and had received no prior incident reports. Doc. 1-1 at 8–9.

To proceed on a claim of discrimination related to a violation of the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the government engaged in invidious discrimination against him based on race, religion, national origin, or some other

constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . [An allegation] of ... discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

"'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Where an inmate challenges actions of a correctional official, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause. *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

Notably absent from Carson's assertion of unequal treatment is any assertion of protected characteristics giving rise to an equal protection claim. Carson therefore fails to

meet his pleading burden as he does not allege much less indicate he was treated differently regarding the challenged conduct because of some form of invidious discrimination based on a constitutionally protected interest. *Sweet,* 467 F.3d at 1319. Rather, he simply makes the conclusory assertion that his right to equal protection was violated which is insufficient to support his claim.

### (3)  Retaliation Claim

Carson maintains his attempts to have the offense code changed to charge him with the appropriate offense conduct were met with recrimination and retaliation. Specifically, Carson claims his appeals of the DHO's finding were denied and prison officials transferred him from FPC McKean to FPC Montgomery. Doc. 1-1 at 7–10.

While prisoners have a right to be free from arbitrary punishment in disciplinary proceedings, they are sufficiently protected from such action where the procedural safeguards in *Wolff*, 418 U.S. 539, have been satisfied. *Guillen v. Finnan*, 219 F. App'x. 579, 582 (7th Cir. 2007). As explained, Carson was afforded the appropriate procedural safeguards mandated by *Wolff* during his disciplinary proceedings. *See supra* at 6–10. Taking Carson's allegations as true, there is some evidence on the record to support the challenged disciplinary regardless of the alleged retaliatory conduct. Therefore, this claim does not entitle Carson to habeas corpus relief.

Moreover, the Court finds a writ of habeas corpus is the means by which prisoners may challenge the legality of their confinement. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411

U.S. 475, 484 (1973). If Carson's allegation of retaliation is considered a challenge to a condition of confinement, the law is settled that relief from unconstitutional prison conditions is not release by writ of habeas corpus but by discontinuance of the improper practice or correction of the conditions. *See Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991) (holding that "'[t]he appropriate Eleventh Circuit relief from prison conditions that violate the [Constitution] . . . is to require the discontinuance of any improper practices, or to require correction of any condition causing [the violation.]' *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (requests for relief relating to the circumstances of confinement may be presented in a civil rights action, while challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (explaining that claims challenging the conditions of confinement "fall outside th[e] core [of habeas corpus]" and may be brought in a civil rights action). Consequently, to the extent Carson's allegation of being subjected to retaliatory conduct by prison officials in violation of his First Amendment rights is more akin to those claims asserted in a civil rights action, it is more appropriately reviewed in a *Bivens* action,[5] not in a habeas corpus petition.

---

[5] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

### III.     CONCLUSION

For these reasons, the undersigned Magistrate Judge RECOMMENDS the 28 U.S.C. § 2241 Petition for Habeas Corpus relief filed by Eugene Carson be DENIED with prejudice.

It is ORDERED that **by May 2, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3–1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 18th day of April 2022.

                                                /s/   Charles S. Coody
                                                CHARLES S. COODY
                                                UNITED STATES MAGISTRATE JUDGE